## STRICKLIN *v.* STATE.

Opinion delivered January 20, 1900.

ASSAULT—EVIDENCE.—In an indictment for an aggravated assault, evidence that, a few minutes before the assault was committed, the person assaulted went to defendant's house and threatened to kill him, and followed him with a gun, making violent threats, is admissible only n mitigation of the punishment, and not as a justification, where, at the time the assault was committed, the person assaulted had laid down his gun and was going away. (Page 353.)

Appeal from Clark Circuit Court.

JOEL D. CONWAY, Judge.

*C. V. Murry* and *E. B. Kinsworthy*, for appellant.

The court erred in refusing to allow appellant to prove the facts and circumstances immediately leading up to and following the shooting. These facts and circumstances were admissible as *res gestœ*. 43 Ark. 100; 29 Ark. 249; 27 Cal 572. In connection with proof of threats, evidence of previous attacks and affrays is admissible. 11 Tex. App. 288. When there has been a continuous quarrel or difficulty between the parties, the evidence may cover the entire difficulty. 47 Mo. 604. Prior uncommunicated threats are admissible as bearing on motive. 55 Ark. 593; 43 Ark. 289; 60 Ark. 575; 147 Ill. 444; 52 Ala. 1; 26 Ala. 31; 61 Miss. 749; 54 Miss. 430; 62 Ark. 123. The court erred in refusing to give the first instruction asked by appellant. 55 Ark. 593; 52 Ark. 45. In order to justify a shooting as done in self-defense, the danger need not have been real. It is sufficient if the party acted in the reasonable belief of such danger. 13 Tex. App. 561–5; 47 Mo. 604; 55 Ark. 595; *ib.* 132.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellee.

Mere threats do not justify a killing. 36 Ark. 653. The circumstances show that the shooting was not done in self-defense. 52 Ark. 46; 34 Ark. 469.

BUNN, C. J. This is an indictment for an aggravated assault with a deadly weapon, under section 1476 of Sand. & H. Digest, which reads as follows, to-wit:

"If any person shall assault another with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant disposition, he shall be adjudged guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than fifty nor exceeding one thousand dollars, and imprisonment not exceeding one year."

To the indictment the defendant entered his plea of "not guilty," and a trial was had resulting in a conviction and verdict for $100 fine and one hours' imprisonment, and judgment

was rendered accordingly, and from this judgment, motion for new trial being overruled, the defendant appealed to this court.

In the course of the trial, the defendant testified as follows: "My daughter advised me that Gray was coming, and not to go back that way, that he would waylay me. I took her into the house, and looked out and saw Gray (the assaulted person) coming with his gun, and told him not to come closer. He said: 'Don't shoot.' I said: 'Lay your gun down.' I told him that I had come to get a warrant (this was at the J. P's. residence) to have him arrested for the way he had treated me. I told him to lay it (the gun) down. He started to pick it up again, then I made a motion like I was going to shoot. I said: 'Consider yourself a prisoner. I came to get a warrant for you, but the officer is gone, so I am going to hold you to keep you from hurting me.' 'Question. Did he say, I don't want to hurt you?' Answer. 'No sir, Mr. Gray didn't say that.' I said: 'I am going to arrest you for the way you have treated me.' He said: 'You ain't going to do it.' I said: 'I am going to keep you until Mr. Norton (J. P.) comes and get a warrant for you.' About that time Gray commenced abusing me, and said he wouldn't be arrested by me. He said: 'You've got my gun, but I'll get another, and come and kill you.' He kept walking off and abusing me, and I shot him. That is the sum and substance of it." Witness said that, after he shot Gray, he went to Gray's gun, picked it up, and fired it off. He then took both guns into the house, and laid them on the bed. His gun was a musket, while Gray's was a single barrel shot gun. (After being shot Gray remained at Norton's house until he came home.) Witness gave as his reason for shooting Gray that the latter was threatening to get another gun and kill him. From this and his conduct on the morning previously, witness thought he would certainly get killed. In his testimony Gray was uncertain whether he dropped or laid his gun down before or after he was shot. The two acts were so close together in point of time he could not remember. Alice Stricklin, daughter of defendant, in her testimony said Gray put down his gun when her father told him to do so, and the shooting was done afterwards. Gray had got off some

little distance from his gun, then lying on the ground, when Stricklin fired, and after that he took up Gray's gun. Stricklin told Gray to lay his gun down, and he did so. These seem to be the undisputed facts as to the occurrences at the scene of the shooting.

Whether Gray had followed Stricklin to Norton's for the purpose of renewing the difficulty of the morning with him, or for the purpose of killing him, or for any other evil purpose, or had gone there, not knowing that Stricklin was there, merely for the purpose of borrowing a horse to ride to another place, as he states, is a disputed fact.

On the calling of the case for trial, the defendant moved for a continuance because of the absence of Dr. Edward Stone, one of his witnesses, who had been duly subpœnaed, and had appeared at the last term, but was not present at the present term. That this witness would swear "that on the day of the alleged assault, a short time before it occurred, he was at defendant's house when the prosecuting witness, James G. Gray, went into defendant's home, and raised a fuss with the defendant, who ordered Gray to leave the house and made him go away; that a few minutes later the said James G. Gray appeared near defendant's home with a gun, and called to defendant, saying, "Come out of your house; I want to kill you, but don't want to kill a man in his own house;" that defendant then requested said witness (Dr. Stone) to go out and get the said Gray to go away, which he did; that this occurred a few minutes before the assault; that defendant then started to the office of a justice of the peace for a warrant of arrest for Gray, who followed defendant to the justice's house, where the alleged assault occurred; that a few minutes after the alleged assault the said Gray, in the presence of said witness, admitted that when defendant shot him he was threatening to kill defendant; that defendant was not to blame for shooting him; that his (Gray's) temper got away with him, and caused the difficulty; that defendant believes these facts to be true, and he cannot prove them by any witness other than the said Stone."

Other witnesses were presented during the trial for the purpose of proving the same facts substantially, but the trial

court held all testimony as to what occurred previously to, and at a different place from the place of, the assault to be immaterial and therefore incompetent.

It is within the sound discretion of the trial court to refuse a continuance on account of the absence of a witness, and this discretion will not be controlled by us, unless abused; but, as the same point was made in substance by the ruling of the court excluding testimony to the same effect, the question should be disposed of as upon an assignment of positive error, and not merely as a question of abuse of discretion. It is contended that the excluded testimony tended to show a "considerable provocation" for the assault, and therefore should have been admitted for the consideration of the jury in determining whether the acts charged really amounted to the crime of aggravated assault with a deadly weapon. It may be admitted that the conduct of the injured party (if as proposed to be set forth by these witnesses) would be annoying and troublesome in the extreme, but whether or not they constituted that "considerable provocation" written in the law is another question, and that question is to be determined by the circumstances in each case. Let it be admitted that Gray "raised a fuss" at defendant's house, and, after being driven off therefrom, returned with his gun making violent threats against defendant if he would come out, — that, in our opinion, would not justify a deadly assault upon him some considerable time afterwards, when he had gone off at the instance of the defendant through Dr. Stone. The provocation spoken of in the law is manifestly that which arouses to incitement on the occasion, is present and temporary in its effects, and ought not to be a defense when it has ceased, and the revenge or hatred it has called forth alone remain. Let it be admitted that Gray followed defendant to the house of the justice of the peace, knowing full well the object of his (defendant's) going there; and that he (Gray) went with the intent, not only to renew the "fuss," but also to carry out his threats; and yet, if he submitted to the reasonable and lawful demands of defendant by disarming himself, it would be a dangerous thing, we think, to say that his previous conduct, as a provocation,

should be regarded as a justification or excuse for the defendant's shooting Gray afterwards, which in such case could only have been done, as defendant testifies, to prevent Gray's killing him some time in the future. We think, therefore, that the court erred in excluding this testimony, not because it would or should have authorized the jury to find the defendant not guilty of the crime charged, but because the defendant was entitled to the benefit of it as a matter of mitigation or lessening the punishment to be inflicted upon him.

The lowest punishment fixed by law for such offense is a fine of $50 and punishment without minimum limit. We therefore modify the judgment, making the fine $50 intead of $100, and the punishment one minute imprisonment in the county jail, instead of one hour, and with these modifications the judgment is affirmed.